**IN THE UNITED STATED DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | | |
|---|---|---|
| BERKSHIRE HATHAWAY DIRECT INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action File |
| v. | ) ) | No. _____ |
| JOHNSON MASONRY, LLC, and ADAMS MASONRY, INC., | ) ) ) | |
| Defendants. | ) | |

_____

**COMPLAINT FOR DECLARATORY JUDGMENT**

**COMES NOW**, BERKSHIRE HATHAWAY DIRECT INSURANCE

COMPANY (hereinafter "biBERK" or "Plaintiff"), and files this its Complaint for

Declaratory Judgment, showing the Court as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.

This action for declaratory judgment is brought pursuant to Rule 57 of the

Federal Rules of Civil Procedure and 28 U.S.C. § 2201 to declare the rights and legal

relations surrounding questions of actual controversy presently existing between

Plaintiff and Defendants.

2.

biBERK is a foreign insurance company organized and existing under the laws of the State of Nebraska, with its principle place of business in the State of Nebraska. For the purposes of diversity, biBERK is a citizen of Nebraska. biBERK is authorized to conduct business in the State of Georgia, and has a registered agent in Lumpkin County.

3.

Defendant Johnson Masonry, LLC (hereinafter "Johnson"), is a Georgia limited liability corporation with its principal place of business located at 104 Garden Lake Drive, Calhoun, Gordon County, Georgia 30701.  Johnson may be served with process through its registered agent, United States Corporation Agents, Inc., 1420 Southlake Plaza Dr., Morrow, Georgia 30260. Upon information and belief, all members of Johnson are citizens of Georgia for diversity purposes, and no members are citizens of Nebraska.

4.

Defendant Adams Masonry, Inc. (hereinafter "Adams"), is a foreign profit corporation organized and existing under the laws of the State of Tennessee with its principal place of business located in Chattanooga, Tennessee.  Adams is a citizen of Tennessee for diversity purposes. Adams is authorized to do business in the State

of Georgia and may be served with process through its registered agent, Charles

Elliot, 2523 Chattanooga Valley Rd., Flintstone, Georgia 30725.

5.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)

in that Plaintiff and Defendants are citizens of different states and the value of the

matter in controversy, exclusive of interest and costs, exceeds the $75,000.00

jurisdictional amount.

6.

Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, as the events

giving rise to this matter occurred within this District.

## THE UNDERLYING LAWSUIT

7.

On or about June 5, 2020, Adams filed a lawsuit against Johnson (and initially

naming Plaintiff) styled *Adams Masonry, Inc. v. Johnson Masonry, LLC*, Superior

Court of Gordon County, Civil Action No. 20CV70372. (the "Underlying Action")[1].

---

[1]In the original Complaint in the Underlying Action, Adams also sought to pursue a declaratory judgment action against biBERK.  However, on September 10, 2020, upon Adams' motion, the Court dismissed biBERK as a party and those claims are no longer pending.

A true and correct copy of Adams' Complaint filed in the Underlying Action ("the Complaint") is attached hereto as Exhibit A.

8.

In the Complaint filed in the Underlying Action, Adams alleges that it contracted with Ascent Hospitality Management Company (referred to as the "Owner" in the Underlying Action) to perform masonry work and other related work for a construction project in Dalton, Georgia (referred to as the "Project" in the Underlying Action). Adams further alleges that it entered into a subcontract with Johnson to perform a portion of the masonry work on the Project.

9.

The Complaint alleges that Adams provided Johnson with copies of all the relevant contract documents, drawings and specifications for the Project, and that Johnson began its work on the Project on August 12, 2019.

10.

The Complaint alleges that after performing its work for a little over three months, Adams and the Owner discovered that Johnson failed to install steel rebar as required for the concrete masonry walls which Johnson built for the Project.

11.

The Complaint alleges that as a result of Johnson's failure to install steel rebar in the concrete masonry walls it was constructing, the walls had to be torn down and completely rebuilt.

12.

The Complaint alleges that as a result of Johnson's failure to install steel rebar in the concrete masonry walls it was constructing, Adams was forced to perform additional work to some of the walls so that they could remain as part of the Project.

13.

The Complaint alleges that as a result of Johnson's failure to install steel rebar in the concrete masonry walls it was constructing, substantial damage was caused to the portions of work performed by other trades on the same Project, including structural concrete hollow core plan flooring and structural steel.

14.

The Complaint alleges that as a result of Johnson's failure to install steel rebar in the concrete masonry walls it was constructing, Adams has been forced to pay at least $274,199.39 in damages to correct damaged work on the Project.

15.

The Complaint asserts the following causes of action against Johnson:

Count I – Breach of Contract

Count II – Defective or Negligent Construction

## **THE BERKSHIRE HATHAWAY INSURANCE POLICY**

16.

biBERK issued Businessowner's Policy No. N9BP076750 (hereinafter referred to as "the Policy") to Johnson for the policy period of January 25, 2019 through January 25, 2020. The Policy provides for general liability coverage in the amount of $1,000,000 per occurrence, $2,000,000 in the general aggregate, and $2,000,000 in the product-completed operations aggregate. A certified copy of Policy, which includes the Declarations and Endorsements, is attached hereto as Exhibit B.

17.

The Policy's property and liability coverage is set forth in the Businessowners Coverage Form (Form No. BP 00 03 01 10) ("the BOP Coverage Form").  (*See* Exhibit B).

18.

The Business Liability Coverage under the BOP Coverage Form provides, in pertinent part, as follows:

## SECTION II – LIABILITY

### A. Coverages

#### 1. Business Liability

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **D.** – Liability And Medical Expenses Limits Of Insurance in Section **II** – Liability; and

**(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

**b.** This insurance applies:

**(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** The "bodily injury" or "property damage" occurs during the policy period; and

**(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

\* \* \*

19.

The BOP Coverage Form also includes the following definitions:

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
b. You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by:

(1) The repair, replacement, adjustment or removal of "your product" or "your work"; or
(2) Your fulfilling the terms of the contract or agreement.

\*\*\*

**13.**   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

**16.**   "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   **(1)** Products that are still in your physical possession; or
   **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      **(a)**   When all of the work called for in your contract has been completed.
      **(b)**   When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
      **(c)**   When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

\*\*\*

17.   "Property damage" means:

    a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss shall be deemed to occur at the time of the physical injury that caused it;

    b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18.   "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies  are alleged. "Suit" includes:

    a.  An Arbitration proceeding in which such damages are claimed and to which the insured must submit or do submit with our consent; or

    b.  Any other alternative dispute resolution proceeding in which such damages are claimed  and to which the insured submit with our consent.

***

21.   "Your product":

    a.  Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (a)   You;

        (b)   Others trading under your name; or

        (c)   A person or organization whose business or assets you have acquired; and

    b.  Includes:

- 10 -

(1) Warranties or representations made at any time with respect to the  fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

**22.**   "Your work":

a.  Means

(1)  Work or operations performed by you or on your behalf; and
(2)  Materials, parts or equipment furnished in connection with such work or operations.

b.  Includes:

(1)  Warranties or representations made at any time with respect to the fitness, quality, durability or  performance  or use of your work"; and

(2)  The providing or failure to provide warnings or instructions.

***

(*See* BOP Coverage Form, pp. 43-46).

20.

The BOP Coverage Form also includes the following exclusions:

**B. Exclusions**

**1.  Applicable To Business Liability Coverage**

This insurance does not apply to:

***

b.    **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)    That the insured would have in the absence of the contract or agreement; or

(2)    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a)    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\*\*\*

k.    **Damage To Property**

"Property damage" to:

\*\*\*

**(5)**    That particular part of real property on which you or any contractor or subcontractor working directly or indirectly

- 12 -

on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\*\*\*

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

\*\*\*

**l.    Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m.    Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

This exclusion does not apply to the loss of use of any other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.    Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o.     Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(**1**) "Your product";
(**2**) "Your work"; or
(**3**) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

(*See* BOP Coverage Form, pp. 33-37).

## DECLARATORY JUDGMENT

### 21.

The allegations contained in paragraphs 1 through 20 above are re-alleged and incorporated by reference as if fully set forth herein.

22.

When Adams filed the Complaint against Johnson, it also served a copy of the Complaint on biBERK as Johnson's liability insurer.

23.

Upon receipt of the Complaint and following a review of the relevant Policy, biBERK issued a reservation of rights to Johnson regarding the claims raised in the Underlying Action, but agreed to provide a defense to Johnson for the claims, subject to its right to withdraw its defense at a later date.

24.

Based on the allegations in the Underlying Action, the Policy does not provide coverage to Johnson for the claims asserted against it by Adams in the Underlying Action.

25.

The claims asserted by Adams against Johnson in the Underlying Action allege property damage, but the property damages alleged appear to fall within one or more exclusions under the Policy which act to bar coverage for the claims asserted by Adams in the Underlying Action, including but not limited to the exclusions for contractual liability; property damage to the part of real property on which Johnson was performing operations, and arising out of Johnson's operations; and/or damage

to property that must be restored, repaired or replaced because Johnson's work was incorrectly performed on it.

26.

Furthermore, the claims asserted by Adams against Johnson in the Underlying Action allege property damage to Johnson's product and/or Johnson's work, and allege damages associated with the repair and replacement of Johnson's product and/or Johnson's work because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

27.

The exclusions from the Policy quoted herein apply to bar coverage for the claims raised by Adams against Johnson in the Underlying Action

28.

biBERK has not acted to deny coverage or a defense to Johnson for the claims asserted by Adams in the Underlying Action.

29.

biBERK is uncertain with respect to its duties and obligations under Policy No. N9BP076750 in connection with the claims asserted in the Underlying Action, including whether biBERK must continue to provide a defense to Johnson or provide indemnity for any judgment or settlement regarding Adams' claims.

30.

An actual and justiciable controversy has arisen and now exists regarding the legal rights and obligations between biBERK and Defendants concerning whether the Policy provides coverage to Johnson for any of the claims asserted by Adams in the Underlying Action.

31.

As biBERK's and Defendants' future course of action may be directly governed by the status of coverage afforded or denied pursuant to the exclusion referred to above, the parties are faced with uncertainty as to their rights and legal obligations. biBERK has no adequate remedy at law or otherwise except by this Complaint for Declaratory Judgment. biBERK is presently uncertain of its rights, obligations and duties in regard to the extent of possible coverage.

32.

biBERK seeks a declaration from this Court with respect to its duties and obligations under the Policy in connection with the claims asserted by Adams in the Underlying Action.  Specifically, biBERK seeks a declaration from this Court that it has no obligation to provide a continued defense to Johnson in the Underlying Action, nor does it have an obligation to provide indemnity for any judgment or settlement.

33.

By reason of the foregoing, it is necessary and appropriate at this time for the Court to determine and declare the respective rights, obligations, and liabilities, if any, which exist among the parties to this lawsuit under the Policy.

WHEREFORE, Plaintiff prays:

(a)     The process and summons be issued to Defendants and the service of Defendants be had as required by law;

(b)     For a declaratory judgment of the rights and obligations of the parties to the Policy;

(c)     For a declaration that there is no coverage under the Policy for the claims in the Underlying Lawsuit and that Plaintiff has no duty to defend any claims or actions or pay any judgment in the Underlying Lawsuit arising out of the incident involving Defendants;

(d)     That Plaintiff be awarded costs in this action; and

(e)     That Plaintiff be awarded any other further relief that this Court deems just and proper.

This 7th day of December, 2021.

Respectfully submitted,

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

By:    _/s/ Drew C. Timmons_
          Drew C. Timmons
          Georgia State Bar No. 358626
          *Attorney for Plaintiff*

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309-3231
(404) 874-8800
(404) 888-6199
drew.timmons@swiftcurrie.com

## <u>7.1 CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this document was prepared in Times New Roman font,

14 point, and complies with Local Rules 5.1(C) and 7.1(D), NDGa.

This 7th day of December, 2021.

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

By:   /s/ Drew C. Timmons
Drew C. Timmons
Georgia Bar No. 358626

*Attorney for Plaintiff*

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, GA   30309-3231
Tele: (404) 888-6151
Fax:  (404) 888-6198
drew.timmons@swiftcurrie.com

4832-9947-6720, v. 1