UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| BERKSHIRE HATHAWAY DIRECT INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> JOHNSON MASONRY, LLC, et al., <br><br> Defendants. | CIVIL ACTION NO. <br> 4:21-CV-00231-JPB |

## ORDER

This matter is before the Court on Berkshire Hathaway Direct Insurance Company's ("Berkshire") Motion for Summary Judgment [Doc. 23] and Adams Masonry, Inc.'s ("Adams") Motion for Summary Judgment [Doc. 25]. This Court finds as follows:

### PROCEDURAL HISTORY

Berkshire filed this insurance coverage dispute against Adams and Johnson Masonry, LLC ("Johnson") on December 7, 2021. [Doc. 1]. Specifically, Berkshire asks this Court to issue a declaration that it does not have an obligation to provide a defense or coverage to Johnson, who performed faulty workmanship in connection with a contract with Adams. On December 16, 2022, Berkshire and Adams filed cross-motions for summary judgment. [Doc. 23]; [Doc. 25]. The motions are now ripe for review.

## BACKGROUND

The Court derives the facts of this case from Berkshire's Statement of Undisputed Material Facts [Doc. 23-6], Adams's Response to Berkshire's Statement of Undisputed Material Facts [Doc. 29], Adams's Additional Material Facts [Doc. 30], Berkshire's Response to Adams's Statement of Additional Material Facts [Doc. 33], Adams's Statement of Material Facts [Doc. 25-3] and Berkshire's Response to Adams's Statement of Material Facts [Doc. 27]. The Court also conducted its own review of the record.

I.  **The Subcontractor Agreement**

Ascent Hospital Management Company hired Adams to perform masonry work on the Fairfield Inn in Dalton, Georgia. [Doc. 23-6, p. 2]. Adams, in turn, entered into a subcontractor agreement with Johnson to perform a portion of that masonry work. Id. Specifically, the subcontract required Johnson to (1) install concrete masonry walls for the entire first floor of the structure; (2) construct stair towers; (3) reinforce the walls with steel rebar; and (4) grout the walls. Id. at 2-3.

After several months, Adams discovered that Johnson failed to install steel rebar within the walls. Id. Consequently, Adams performed remedial work to correct the problem. Id. To perform this work, Adams had to demolish and rebuild the concrete masonry walls and stair towers constructed by Johnson. Id. at 5. This required Adams to remove, set aside and then reinstall Hollowcore slabs

and steel I-beams, which had already been installed by another contractor. Adams asserts that it incurred $167,786.78 in damages associated with "deconstructing, storing, and reconstructing the . . . Hollowcore plank flooring and structural steel." [Doc. 29, p. 2]. These are the only expenses at issue in this case.

## II. The Insurance Policy

From January 25, 2019, to January 20, 2020, Johnson was insured by Berkshire. [Doc. 23-6, p. 7]. The policy provided coverage for "those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' . . . to which this insurance applies." Id. The policy defined property damage as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." [Doc. 25-1, p. 53].

The policy contained several exclusions: (1) the "contractual liability" exclusion; (2) the "your work" exclusion; (3) the "your product" exclusion; (4) the "impaired property" exclusion; and (5) the "recall" exclusion.[1] These exclusions are known as the "business risk" exclusions. The Court will first discuss the "contractual liability" exclusion. Under this exclusion, the insurance does not apply to "'property damage' for which the insured is obligated to pay damages by

---

[1] The policy contained other exclusions but neither party argues that those exclusions are relevant.

3

reason of the assumption of liability in a contract or agreement." [Doc. 23-6, p. 8]. The "your work" and "your property" exclusions exclude from coverage "'property damage' to [t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it" and "'[p]roperty damage' to 'your product' arising out of it or any part of it." Id. The "impaired property" exclusion excludes from coverage "'property damage' to 'impaired property' or property that has not been physically injured, arising out of . . . [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work.'" Id. at 9. The "recall" exclusion excludes from coverage "[d]amages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of" the insured's product, work or impaired property. Id.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson

4

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Allen, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party."  Id.  Where, as here, the parties file cross-motions for summary judgment, the facts are viewed in the light most favorable to the nonmoving party on each motion.  James River Ins. Co. v. Ultratec Special Effects Inc., 22 F.4th 1246, 1251 (11th Cir. 2022).  After the movant satisfies this initial burden, the nonmovant must show specific facts indicating that summary judgment is improper.  Allen, 121 F.3d at 646.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  If the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'"

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

Under Georgia law, insurance contracts "are interpreted by ordinary rules of contract construction." Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 498 S.E.2d 492, 494 (Ga. 1998). Contract interpretation requires three steps:

> First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

City of Baldwin v. Woodard & Curran, Inc., 743 S.E.2d 381, 389 (Ga. 2013).

"An insurance contract will be deemed ambiguous only if its terms are subject to more than one reasonable interpretation." State Farm Mut. Auto. Ins. Co. v. Staton, 685 S.E.2d 263, 265 (Ga. 2009). In the event of ambiguity, the insurance policy will be "construed liberally against the insurer and most favorably for the insured." Id. Importantly,

> while an ambiguity is to be construed in favor of the insured, "this court may not strain the construction of the policy so as to discover an ambiguity." In other words, the rule of liberal construction of an insurance policy cannot be used to create an ambiguity where none, in fact, exists.

Id. at 265-66 (internal citation omitted).

## ANALYSIS

The issue before the Court is a narrow one. Indeed, the only thing disputed between the parties is whether the costs incurred as a result of removing, storing and reinstalling the Hollowcore flooring and steel I-beams are covered by the policy. It is undisputed that these costs were incurred in conjunction with the repair of Johnson's defective work.

As previously stated, the policy provided coverage for "property damage." The Supreme Court of Georgia has explained that there is a "difference between a claim for the costs of repairing or removing defective work, which is not a claim for 'property damage,' and a claim for the costs of repairing damage caused by the defective work, which is a claim for 'property damage.'" Taylor Morrison Servs., Inc. v. HDI-Gerling Am. Ins. Co., 746 S.E.2d 587, 591 n.10 (Ga. 2013). Georgia courts have also held that business risk exclusions like the ones at issue in this case "exclude liabilities for the repair or correction of defective work from the scope of coverage." Auto Owners Ins. Co. v. Gay Constr. Co., 774 S.E.2d 798, 800 (Ga. Ct. App. 2015). Indeed, Georgia courts have recognized that a contractor bears the business risk to "replace or repair defective work to make the building project conform to the agreed contractual requirements." Id. at 801.

In this case, Adams seeks to recover some of the damages incurred in repairing Johnson's defective work. Specifically, Adams seeks to recover the costs

associated with removing, storing and reinstalling Hollowcore flooring and steel I-beams. It is clear to the Court that Adams only seeks damages associated with the repair to Johnson's faulty workmanship, "which is precisely the type of claim generally barred by business risk exclusions." Id. The problem with this claim is that Johnson's failure to install rebar within the walls "did not cause damage independent of the repair and replacement of the [walls]." Palm Beach Grading, Inc. v. Nautilus Ins. Co., 434 F. App'x 829, 831 (11th Cir. 2011) (applying Florida law). In fact, to the extent that there was any property damage at all to the Hollowcore flooring or steel I-beams, that damage was caused by the repairs—not the defective work. See Gentry Mach. Works, Inc. v. Harleysville Mut. Ins. Co., 621 F. Supp. 2d 1288, 1298 (M.D. Ga. 2008) (explaining that no coverage exists for damages caused by the repairs); Sapp v. State Farm Fire & Cas. Co., 486 S.E.2d 71, 75 (Ga. Ct. App. 1997) (finding coverage barred by policy because "all [the plaintiff's] claimed damages relate directly to the cost of repairing or replacing the alleged negligent work of [the] defendants"). In sum, because Adams's claim is solely for incidental damages incurred in the process of remediating the work performed by Johnson, the policy does not apply.

## CONCLUSION

For the forgoing reasons, Berkshire's Motion for Summary Judgment [Doc. 23] is **GRANTED**, and Adams's Motion for Summary Judgment [Doc. 25] is **DENIED**.  The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 26th day of September, 2023.

> J. P. BOULEE
> United States District Judge